A93A1429. HULSEY v. THE STATE.
(435 SE2d 713)

BEASLEY, Presiding Judge.

Appellant was convicted of theft by taking a 1990 burgundy Chevrolet pickup truck driven by Tony Ledford and owned by Sparta Carpets (Count 1); a 1986 Chevrolet Silverado pickup truck owned by Cornelius Ogle (Count 2); and a 1988 Chevrolet Silverado pickup truck owned by Clarence Vickers, a Florida resident (Count 3). OCGA § 16-8-2. Sufficiency of the evidence and admissibility of the photographic lineup and identification are at issue.

All three trucks were stolen within a 48-hour period on August 15 or 16, 1991, from the same general area near I-75 in Dalton and Whitfield County.

Georgia State Patrolman Robert Bullard testified that during the late afternoon or early evening hours on August 16, he was on routine patrol proceeding northward on I-75 in Gordon County, which borders Whitfield County's southern boundary. He saw a pickup truck

with its flashers on parked on the shoulder of the southbound lanes between Exits 132 and 133. Trooper Bullard turned around at Exit 133 and was proceeding back southward when he saw a burgundy pickup truck parked near the exit ramp of a rest area. An individual, whom Trooper Bullard was only able to describe as a white male in his twenties, was standing by the truck. He told Trooper Bullard that he was waiting for someone to come out of the rest area. Trooper Bullard got back into his car and was leaving when he saw the other, abandoned truck some 200 yards down the road with its flashers still going. Trooper Bullard went to investigate and noticed that this truck had a broken-out passenger window and a Florida tag.

While he was examining this truck, Trooper Bullard received a radio bulletin that while he had been talking to the man beside the other truck, a car had begun to leave the rest area; when the driver saw the patrol car, he backed up the wrong way on the exit ramp and went back into the rest area; and he and a passenger parked the car, got out, and ran into the woods. They were not apprehended.

After Trooper Bullard had gone back to the rest area to talk to the attendant, he received a radio lookout from Dalton for two stolen Chevrolet pickup trucks, one of which had a Florida tag. Trooper Bullard realized that he had spotted at least one of the trucks and called for assistance. After Trooper Payne appeared, the truck with the white male standing beside it was driven back into the rest area. However, the driver saw the officers, backed down the entrance ramp, got back on I-75, and got off at Exit 132. Although Trooper Payne pursued the truck, he did not apprehend the driver. Within about 30 to 45 minutes, Ledford's burgundy truck was found at a Piggly Wiggly store. It bore an Alabama tag.

Deborah Stewart, the rest area attendant, testified that earlier that afternoon two men had come to the rest area, parked adjacently a white Chevrolet automobile and a pickup truck, and moved items from one vehicle to the other. Stewart identified the truck as the one belonging to Vickers. The men left in separate vehicles but returned in the white car about an hour later. As previously stated, they saw the patrolman as they were leaving, abandoned the car, and absconded into the woods. Stewart got a good look at the driver of the car, whom she described as having dark curly hair and as being clean-shaven.

After notifying the State Patrol, Stewart observed a red pickup truck enter the rest area and park about ten feet from the abandoned white car. The driver asked her for the whereabouts of the two men in the car. She falsely stated that they were in the bathroom, hoping to detain him. He talked to her for about a minute at a distance of about a foot and then told her he needed to lock the car. He went to the car, got a piece of paper, put it in the car, removed an unidentified object

from the car, rolled up the car windows and locked the doors. This took about two or three minutes. He came back to Stewart and talked to her for about another minute. He told her that if the two men came back to the car, they would have a key. He then got in the truck and left. This was the truck which later re-entered the rest area and was pursued by Trooper Payne. Stewart described the driver as about six feet tall, real skinny, with a beard, mustache, and shoulder-length reddish-brown hair.

These thefts were investigated by Whitfield County Sheriff's Investigator Nancy Chadwick and Dalton Police Detective Keith Smith. They impounded Vickers' truck, Ledford's truck, and the white car. All three vehicles contained CB radios tuned to the same channel. Although the officers never recovered Ogle's truck, they found various items belonging to both Vickers and Ogle in the white car. Inside the car, they found a handwritten note inscribed, "Gone home. Greg." Gregory is appellant's first name.

Detectives Chadwick and Smith learned that the white Chevrolet was registered to O. T. Hulsey, a resident of Tallapoosa, Georgia, who operated a car repair garage. He is appellant's father. Appellant is a mechanic who buys old cars, fixes them up, drives them, and then sells them. He drove the white Chevrolet.

The detectives obtained a photograph of appellant and incorporated it into an array of six photographs. They showed several such photographic arrays or spreads to Stewart at her home on September 9. As they handed the spreads to her, they told her to take her time looking at them and try to be sure. As she was viewing them, they went to another area of the house. She looked at one spread and then another for about two minutes before she was sure. She picked out two of the perpetrators and positively identified appellant as the man driving the red truck. Stewart testified that after she identified appellant, Detective Smith said, " 'All right.' He said, 'We've been after a ring for a while and we believe we've finally got somebody to identify one of them.' "

Appellant testified that he had sold the white car for $400 cash on July 31, but that he did not know the name of the person to whom he had sold it. Nor did he have a bill of sale. He produced a bank slip showing a $400 deposit on August 1, as proof that he had received the proceeds of the sale.

He also presented alibi witnesses. One of them lived in the same town in Alabama from which the tag found on Ledford's truck originated.

1. Appellant contends that the trial court erred in denying his motion for directed verdict as there was insufficient evidence to prove him guilty of theft by taking under all three counts of the indictment.

Appellant argues that the circumstantial evidence did not ex-

clude every other reasonable hypothesis save that of guilt. OCGA § 24-4-6. " 'To sustain the judgment of conviction, the evidence need not exclude every inference or hypothesis except guilt of the accused, but only reasonable inferences and hypotheses, so as to justify the inference, beyond reasonable doubt, of guilt. [Cit.] Questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb the finding, unless the verdict is unsupportable as a matter of law.' [Cits.]" *Chambless v. State*, 165 Ga. App. 194, 196 (2) (300 SE2d 201) (1983). The verdict is not unsupportable as a matter of law.

As argued by the State, the evidence was sufficient to have authorized any rational trier of fact in finding beyond a reasonable doubt that appellant was concerned in the commission of these crimes. OCGA § 16-2-20.

2. Appellant contends that under the totality of the circumstances, the court committed reversible error when it admitted the photographic lineup evidence and identification testimony.

Appellant argues that the array containing his photograph was impermissibly suggestive, in that appellant's photograph is the only one depicting a suspect as being six feet tall, and two of the photographs depict men who are obese. After reviewing the record, we hold that the array was not impermissibly suggestive in these regards. Height is not shown for everyone, and body size is not depicted for any.

Appellant also argues that Detective Smith's remark was unduly suggestive and tainted Stewart's in-court identification. It is not good practice to indicate to a witness that she has chosen the "right" person as it could lead to an improper tainting of a subsequent in-court identification in a questionable case. Whether a subsequent in-court identification is tainted depends on all the circumstances of each case. *Dodd v. State*, 236 Ga. 572, 573 (224 SE2d 408) (1976). " '(C)onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' [Cits.]" Id.

The witness observed the appellant for five minutes, and part of this time she was conversing with him while he was only a foot away. Her attention was focused upon him as a possible suspect. She quickly identified his photograph in the display and maintained confidence in the accuracy of her identification. Appellant does not argue that her prior description of him was inaccurate. Under all of the circumstances, it is safe to conclude that the officer's remark did not

taint the witness' in-court identification.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED AUGUST 27, 1993 —
RECONSIDERATION DENIED SEPTEMBER 14, 1993

*Little & Westbury, Victoria D. Little, Thomas E. Westbury,* for appellant.

*Jack O. Partain III, District Attorney, Melvin E. Hyde, Jr., Assistant District Attorney,* for appellee.