A04A0644. TURBEVILLE v. THE STATE.
(601 SE2d 461)

MIKELL, Judge.

Steven Turbeville was convicted of two counts of aggravated assault and two counts of pointing a gun or pistol at another by a Barrow County jury. Turbeville was sentenced to ten years on each count of aggravated assault, the second to run concurrent with the first, and twelve months on each count of pointing a gun at another, the second to run concurrent with the first. Turbeville's entire sentence was probated, and he was ordered to pay an $8,000 fine. On appeal, Turbeville argues that the verdict was contrary to the weight of the evidence and challenges several of the trial court's evidentiary rulings. Finding no error, we affirm.

> On appeal of a criminal conviction, we view the evidence in the light most favorable to support the verdict, and the defendant is no longer entitled to a presumption of innocence. We do not weigh the evidence or decide witness credibility, but simply determine whether the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of the crimes charged. Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some

competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld.[1]

So viewed, the evidence shows that on the evening of September 4, 2001, Mitchell Church, and his friend, David Adams, were standing in Church's driveway when two men drove up in a dark green or black car. Church testified that the men, who appeared to be under the influence of drugs or alcohol, sat in the car and stared at them. They commented that they were not going to turn around in Church's "frigging" yard, then backed into a neighbor's driveway and asked Church and Adams for directions. After Church answered, the passenger, later identified as Turbeville, pulled out a black handgun and pointed it at them. Church and Adams dove behind Church's car, then watched as the car drove away erratically. Both men described the driver as a "skinny, dark-headed guy" and the passenger as heavyset, with blond hair. Mrs. Church called 911 at approximately 8:19 p.m. to report the incident.

Nine minutes later, Scottie Dukes's wife called 911 after a car that had been parked in their driveway, with its engine racing and its horn blowing, sped off erratically. Dukes reported that as the car exited his driveway, he heard the sound of a gun "chambering." Dukes explained that he recognized the sound because he was an avid hunter. Dukes testified that the car was a small, sporty-looking, dark-colored, four-door car.

At 8:36 p.m., Tracy Cooper, who was working at a Super H store, called the police after two men left the store. The men appeared to be intoxicated, and one of them verbally abused her when she informed him that the store did not have a public bathroom. She described that man as small and thin with dark hair and his companion as a "bigger guy with blond hair." She recalled that the larger man drove away while the smaller man hung out of the window making obscene hand gestures and calling her names. Cooper told the police that the men drove a small, dark car with a partial tag number of 874. At approximately 8:45 p.m., Officer Tony Holcomb observed the vehicle and began to follow it. After the car made a U-turn, Holcomb activated his blue lights, but the car raced away. The police chase ended when the car wrecked, and the small, thin man was killed. A black handgun was found inside the car.

---

[1] (Citation omitted.) *Baker v. State*, 259 Ga. App. 433 (1) (577 SE2d 282) (2003).

Officer Trey Downs responded to Mrs. Church's 911 call and interviewed Church and Adams. A month later, Church and Adams identified Turbeville from a photographic lineup. Both men identified Turbeville in court.

1. Turbeville argues that the trial court should have granted his motion for new trial because the jury verdict was contrary to the weight of the evidence. We disagree.

A person commits the offense of aggravated assault when he assaults with a deadly weapon which, when used offensively against a person, is likely to or actually does result in serious bodily injury.[2] "The facts here establish clearly that appellant committed an act with a deadly weapon which placed [Church and Adams] in reasonable apprehension of immediately receiving a violent injury[, which] is sufficient to support the charge[s] of aggravated assault."[3] There is no requirement that the victim sustain an actual injury, and the crime is complete without proof thereof.[4] The evidence was also sufficient to support Turbeville's conviction for pointing a gun at another.[5]

Turbeville also argues that his conviction should be reversed because Church's testimony was not credible. "As an appellate court, we do not weigh the evidence or assess witness credibility."[6] We note, however, that in each instance where Turbeville challenges Church's credibility, his contentions are not supported by the record. Turbeville contends that Church "unequivocally stated that [the picture from the lineup] did not match the assailant" but provides no record cite in support of this statement. Moreover, the record shows that Church unequivocally identified Turbeville from the lineup. Turbeville states that Church testified that the car involved in the incident was black, when it was actually green. Conversely, the record shows that Church testified that the car was either dark green or black. Finally, Turbeville claims that Church testified that he did not see a gun, when on cross-examination, Church testified that he saw the gun for four or five seconds. Accordingly, this error fails.

2. Turbeville next argues that the trial court erred by refusing to grant a continuance to allow his experts time to analyze the firearm that was found in the vehicle at the scene of the wreck. We disagree.

The trial of this case began on March 3, 2003. Turbeville contends that on February 24, 2003, he was notified that the state had located the weapon used in the crime and intended to introduce it at trial. On

---

[2] See OCGA § 16-5-21 (a) (2).

[3] (Citation omitted.) *Daughtry v. State*, 180 Ga. App. 711, 712 (1) (350 SE2d 53) (1986).

[4] *Clark v. State*, 149 Ga. App. 641, 644 (2) (255 SE2d 110) (1979). Accord *Daughtry*, supra at 712 (1).

[5] OCGA § 16-11-102.

[6] (Footnote omitted.) *Boles v. State*, 257 Ga. App. 240 (570 SE2d 677) (2002).

the contrary, the state argued that Turbeville was first informed of the existence of the gun at a calendar call in the case on January 3, the day after the state came into possession of it, and was reminded of its existence in writing on February 25. Turbeville filed his motion for continuance and amended motion to inspect on February 25, which the trial court denied.

"A refusal to grant a continuance will not be disturbed by appellate courts unless it clearly appears that the judge abused his discretion in this regard, and in all cases, the party making an application for a continuance must show that he has used due diligence."[7] Here, the court indicated that there was a dispute as to when defense counsel received notice of the gun's existence and that at the very least, Turbeville had seven days to test the weapon but did not do so. The court also reasoned that the evidentiary value of a test to confirm that there were no fingerprints on the weapon would probably be minimal. We find no abuse of discretion.

3. Turbeville argues that the trial court committed error by allowing the state to exhibit the firearm to the jury without placing it into evidence. Yet, when the gun was exhibited to the jury during the testimony of the officer who confiscated it on the night of the incident, Turbeville raised no objection. Instead, he objected after the state rested and requested a mistrial, which was denied. The "[f]ailure to make a timely objection to testimony when it is offered results in a waiver of any objection that might have been urged."[8] Furthermore, "a motion for mistrial not made contemporaneously with the alleged misconduct makes the motion not timely."[9] Accordingly, this enumerated error fails.

4. Next, Turbeville contends that the trial court erred by failing to suppress the victims' lineup identifications of him and by admitting their in-court identifications.

Testimony concerning a pretrial identification of a defendant is inadmissible if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification.[10] There is a two-step test to determine admissibility: "(1) whether there was

---

[7] (Citation omitted.) *Anderson v. State*, 258 Ga. 70, 71 (1) (365 SE2d 421) (1988).

[8] (Citation and punctuation omitted.) *Burt v. State*, 156 Ga. App. 127, 128 (3) (274 SE2d 124) (1980).

[9] (Citation and punctuation omitted.) *Keri v. State*, 179 Ga. App. 664, 669 (6) (347 SE2d 236) (1986). See *Favors v. State*, 145 Ga. App. 864, 867 (4) (244 SE2d 902) (1978) (where a motion for a mistrial is not made until the conclusion of the evidence, it is not timely and is considered waived because of the delay in making the motion).

[10] *Clark v. State*, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999), citing *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Reid v. State*, 210 Ga. App. 783, 786 (2) (437 SE2d 646) (1993).

an impermissibly suggestive photographic identification procedure, and (2) if so, whether under the totality of the circumstances this resulted in a substantial likelihood of irreparable misidentification."[11] An identification procedure is deemed impermissibly suggestive when it "is the equivalent of the authorities telling the witness, 'This is our suspect.'"[12]

Turbeville argues that the photographic lineup was impermissibly suggestive because Investigator Bruce Bley, who conducted it, indicated that the passenger was depicted in the lineup. The portion of Bley's testimony to which Turbeville refers pertains to the instructions Bley received from the prosecutor about conducting the lineup for Adams. Bley was told to display only the lineup that matched the description of the passenger, not the separate lineup pertaining to the driver. Bley testified that he cautioned Church and Adams that the perpetrator's picture may not be present in the lineup. Adams testified that Bley asked him if the passenger was depicted in the lineup. Bley's question does not render the lineup impermissibly suggestive.

Turbeville also argues that the lineup was impermissibly suggestive because the photographs included therein do not resemble him. He contends that two of the individuals pictured are shorter than him, one has dark hair, and two do not appear to be "heavy-set." Bley testified that he did not use the witnesses' descriptions of the perpetrator to compile the lineup but that he obtained Turbeville's picture from a computer and added five other persons that bore a similar resemblance. The record shows that all of the men pictured were approximately the same age; that they all had short hair and similar facial hair to that of the defendant; that Church and Adams identified Turbeville immediately when shown the lineup; and that they both identified him at trial.[13] We agree with the trial court that the lineup was not impermissibly suggestive. Accordingly, we need not inquire into the likelihood of an irreparable misidentification.[14]

> Whether a subsequent in-court identification is tainted depends on all the circumstances of each case. Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the

---

[11] (Citation and punctuation omitted.) *Jackson v. State*, 209 Ga. App. 53, 54 (1) (432 SE2d 649) (1993).

[12] (Citation omitted.) *Clark*, supra.

[13] See *Talley v. State*, 209 Ga. App. 79-80 (1) (432 SE2d 667) (1993) (photographic lineup was not impermissibly suggestive where three of the six men pictured had the same color hair as the defendant, all six were approximately the same age, the officer did not suggest that the defendant was one of the six, and the victim picked out his attacker within seconds).

[14] *Whatley v. State*, 266 Ga. 568, 569 (2) (468 SE2d 751) (1996); *Pennymon v. State*, 261 Ga. App. 450, 452 (3) (582 SE2d 582) (2003).

photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.[15]

As discussed above, the pretrial photographic lineup was not impermissibly suggestive. A fortiori, the in-court identification was not tainted.

5. In his fifth enumeration of error, Turbeville contends that the trial court erred by failing to suppress testimony regarding the death of the other occupant in the car and the crime scene investigation. We find that Turbeville has waived this error.

The trial court ruled that the state could not refer to the criminal investigation of Turbeville in connection with the collision but could discuss the investigation of the collision itself. Turbeville argues that testimony about his appearance, the other occupant's appearance, the recovery of a gun, and the involvement of a fatality was tantamount to referencing the criminal investigation against him. Yet, in the 21 pages of testimony to which Turbeville refers in his brief, he never objected to the testimony about which he now complains. Therefore, he cannot raise this issue on appeal.[16]

6. Turbeville argues that the trial court erred by allowing the state to introduce a videotape of the police chase because the state did not lay the proper foundation for its admission. Turbeville did not raise this argument below and, thus, cannot raise it on appeal.[17] At the pretrial hearing on his motion in limine to exclude the videotape, Turbeville argued only that the videotape should not be admitted because it did not show the police chase in its entirety. When the videotape was introduced, Turbeville's counsel stated, "I'll rely on my previous objection." "It is well settled that on appeal the ground of the objection stated below cannot be enlarged to include grounds not urged before the trial court. Generally, our review of the admission of the evidence enumerated as error is limited strictly to the ground of objection stated on the trial."[18]

7. Lastly, Turbeville argues that the trial court impermissibly admitted evidence of his character. During the direct testimony of the officer from Walton County who investigated the collision, the state

---

[15] (Citation and punctuation omitted.) *Hulsey v. State*, 210 Ga. App. 251, 254 (2) (435 SE2d 713) (1993).

[16] *Cook v. State*, 270 Ga. 820, 829 (6) (514 SE2d 657) (1999). Accord *Warbington v. State*, 267 Ga. 462, 463 (2) (479 SE2d 733) (1997) (a party cannot ignore an alleged injustice at trial, take his chances on a favorable verdict, and complain later).

[17] *Cook*, supra.

[18] (Citation, punctuation and footnote omitted.) *Pearce v. State*, 256 Ga. App. 889, 891 (2) (570 SE2d 74) (2002).

asked, "When you talked to the Defendant, how did he appear to you? Do you recall?" The witness replied, "From my personal observation, he appeared to be under the influence of something. I did smell alcohol." Turbeville moved for a mistrial, or in the alternative, asked the court to instruct the jury to disregard the officer's comment about Turbeville's being under the influence. The trial court denied the motion and did not give the requested instructions.

"Whether to grant a mistrial based on improper character evidence is within the discretion of the trial judge. In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety."[19] The officer's statement was merely cumulative of other testimony that had been admitted in the case without objection. Church testified the men were acting as if they were on drugs or had been drinking. Cooper testified that the men appeared to be intoxicated or "high on something." A trial court's ruling on a motion for mistrial "will not be disturbed by the appellate courts unless it appears that there has been a manifest abuse of discretion and that a mistrial is essential to the preservation of the right to a fair trial."[20] We find no abuse of discretion here, nor was a mistrial essential to Turbeville's right to a fair trial.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 24, 2004.

*Benjamin C. Free*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

---

[19] (Citations omitted.) *Gibson v. State*, 233 Ga. App. 838, 840 (3) (505 SE2d 63) (1998).
[20] (Citations and punctuation omitted.) *Wilcox v. State*, 229 Ga. App. 192, 193 (2) (493 SE2d 600) (1997).