A05A1085. GRAHAM v. THE STATE.
(614 SE2d 815)

BLACKBURN, Presiding Judge.

Following a jury trial, Adrian Graham appeals his conviction of armed robbery, hijacking a motor vehicle, and possessing a firearm during the commission of a felony. He enumerates two errors: the admission of evidence of a photo lineup and related in-court identifications, and the giving of an allegedly coercive *Allen* charge. We discern no error and affirm.

Construed in favor of the verdict, the evidence shows that at an apartment complex parking lot, Graham forced the victim's boyfriend at gunpoint to give Graham the keys to the victim's car, whereupon Graham and a cohort escaped in the car. The next day the car was found nearby, as witnesses watched the car being stripped. The victim recognized Graham in the crowd of people around the car.

The following day, security officers from the apartment complex showed an array of photos to the victim, who identified Graham's photo as that of the gunman. The security officers confirmed to the victim that Graham, whose name they knew, was one of the persons who had been in the crowd surrounding the car and that the officers had been having a lot of problems with him. The week after the robbery, the victim's boyfriend viewed a separate photo lineup created by police and also identified Graham as the gunman. At trial, both witnesses unequivocally identified Graham as the gunman.

1. Graham first enumerates as error the trial court's admission of the pretrial photo identifications and the subsequent in-court identifications. Following a pretrial hearing, the court had denied Graham's motion to exclude these identifications, finding that the pretrial identifications were not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

On appeal, Graham focuses on the improper stamp of approval voiced by the security officers following the victim's photo identification of Graham and on the length of time between the crime and the boyfriend's photo identification.

"The threshold inquiry is whether the identification procedure was impermissibly suggestive. Only if it was need the court consider the second question: whether there was a very substantial likelihood of irreparable misidentification." *Gravitt v. State*.[1] To determine the second question, the court considers:

> (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness; and (5) the length of the time between the crime and confrontation. In evaluating these factors, the trial court is the trier of fact and must judge the credibility of the witnesses and the weight and conflict in the evidence. Where evidence supports the trial court's ruling, we will not disturb that ruling.

*Lowe v. State*.[2] We will consider the victim's and the boyfriend's identifications separately.

(a) *The victim's identification*. Although evidence supported the trial court's finding that the photo array as shown to the victim was not impermissibly suggestive, the security officers engaged in the disapproved practice of informing the victim that they believed that the victim had made the correct choice. "It is not a good practice to indicate to a witness that he has chosen the 'right' person as it could lead to an improper tainting of a subsequent in-court identification in a questionable case." *Dodd v. State*.[3] Where such occurs, the pretrial identification is considered impermissibly suggestive, and the court must address the second question of whether such comments impermissibly tainted the subsequent in-court identification such that there was a substantial likelihood of irreparable misidentification. Id. See *State v. Willis*;[4] *Hulsey v. State*.[5]

Accordingly, we consider the five factors described in *Lowe* above. The victim was only seven or eight feet away from the gunman during

---

[1] *Gravitt v. State*, 239 Ga. 709, 710 (4) (239 SE2d 149) (1977).

[2] *Lowe v. State*, 264 Ga. 757, 758 (2) (452 SE2d 90) (1994), citing *Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972).

[3] *Dodd v. State*, 236 Ga. 572, 573 (224 SE2d 408) (1976).

[4] *State v. Willis*, 218 Ga. App. 402, 403 (2) (461 SE2d 576) (1995).

[5] *Hulsey v. State*, 210 Ga. App. 251, 254 (2) (435 SE2d 713) (1993).

the crime and got a "good look" at him in good lighting while her attention was riveted on the crime taking place over a two-minute period. She accurately described him to the security officers that night.[6] The day after the crime, she immediately recognized Graham when he was standing in a crowd around her car. At the pretrial photo lineup two days after the incident, she immediately and with great certainty picked Graham out of the lineup before the security guards made their improper comments. At trial, she was "100 percent, absolutely sure" of her in-court identification. Inasmuch as evidence supports a finding of no substantial likelihood of irreparable misidentification, we do not disturb the trial court's decision to admit the victim's pretrial and in-court identifications.

(b) *The boyfriend's identification.* Evidence supported a finding that the boyfriend's photo lineup identification was not impermissibly suggestive, and thus we need not address the second question of the likelihood of irreparable misidentification. The week after the crime, police informed the boyfriend that he was about to view a photo lineup that might or might not include the person who committed the crime, that he should only make an identification if he could do so, and that he should not talk to anyone while viewing the photos. The police then showed him a photo lineup of similar looking males of the same race and approximate age. The boyfriend immediately and with certainty identified Graham from the lineup. This procedure did not lead the boyfriend to the all but inevitable identification of Graham as the perpetrator. See *Tenorio v. State.*[7]

Graham claims that others (not including the victim) told the boyfriend that Graham had committed the crime. But construed in favor of the trial court's ruling, the record shows only that various people told the boyfriend that the name of the person whose photo he had chosen was Graham. No evidence shows that the boyfriend received any of this information before making the pretrial photo identification. The trial court did not clearly err in finding that the photo identification was not impermissibly suggestive. See *Tenorio*, supra (clearly erroneous standard applies to this determination).

2. In his second enumeration, Graham complains that the court gave a defective *Allen* charge when the jury announced it was deadlocked. Since the jury reached a verdict within an hour after receiving the charge, Graham argues that the charge was necessarily coercive. We disagree.

---

[6] Graham points to some conflicting evidence that the victim gave a differing description to police. This simply presented an issue for the court during the motion to suppress hearing and for the jury during the trial to resolve. See *State v. Baker*, 261 Ga. App. 258 (582 SE2d 133) (2003); *Jones v. State*, 220 Ga. App. 236, 237 (2) (469 SE2d 379) (1996).

[7] *Tenorio v. State*, 261 Ga. App. 609 (1) (583 SE2d 269) (2003).

After the jury deliberated six hours the first day, the jury announced it was at an impasse, with a vote count of seven to five. The court sent them home for the day, telling them he would be giving them an additional charge in the morning. The next morning, the court gave them the following jury charge from the pattern instructions:[8]

Ladies and gentlemen, you have now been deliberating upon this case for a considerable period of time, and the court deems it proper to advise you further in regard to the desirability of agreement, if possible. The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict, if possible, and not for disagreement.

It is the law that a unanimous verdict is required, and while this verdict must be the conclusion of each juror, and not mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all the jurors to examine the issues and questions submitted to them with candor and fairness, and with a proper regard for, and deference to, the opinions of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment.

This case must be decided by some jury, ladies and gentlemen, selected in the same manner this jury was selected, and there is no reason to think a jury better qualified than you would ever be chosen.

Each juror should listen to the arguments of other jurors with a disposition to be convinced by them. If members of the jury differ in their view of the evidence, the difference of opinion should cause them all to scrutinize the evidence more closely and to reexamine the grounds of their opinion. Your duty is to decide the issues which have been submitted to you, if you can do so.

In conferring, you should lay aside all mere pride of opinion and you should bear in mind that the jury room is no place for taking up and maintaining, in a spirit of controversy, either side of a cause. You should ever bear in mind that as jurors, you should not be advocates for either side. The aim to keep in view is the truth as it appears from the evidence, examined in the light of the instructions of the court.

---

[8] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Sec. 1.70.70, pp. 46-47 (3rd ed. 2003).

I'm going to excuse you to the jury room now to continue your deliberations, ladies and gentlemen.

Graham points out that in 2004 (two years after the trial here), *Burchette v. State*[9] held "that the statement that the case 'must be decided by some jury' is inaccurate." *Burchette*, however, did not hold that this defect was fatal but instead held that the appellate court had to decide "whether the instruction is so coercive as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." (Punctuation omitted.) Id. at 3. Concluding that the jury charge there was not impermissibly coercive, the court noted that the "must-be-decided" language was but a small portion of an otherwise balanced and fair *Allen* charge, that the jury deliberated two hours after receiving the charge, and that the court polled the jurors, with each affirming that the verdicts announced were the ones that he or she had reached and agreed upon. Id.

Similarly, this year *Nowill v. State*[10] held that the identical pattern charge, also given in that case in 2002, was not inherently coercive. Cf. *McKee v. State*[11] (this pattern charge "comports with our holding in *Romine v. State*"[12]). Citing *Burchette*, *Nowill* noted that the improper language was a small portion of an otherwise fair and balanced charge, that the jury there deliberated for almost the same number of hours both before and after the *Allen* charge, and that the jury was polled after its verdict. Id. at 257-258 (3). See also *Clark v. State*.[13] *Drogan v. State*,[14] decided even more recently, likewise held that the same instruction was not improperly coercive, even though no evidence showed the length of time between the giving of the charge and the return of the verdict.

In the case at bar, the jury was polled after the verdict. Thus, the only difference in this case is that the jury spent less than an hour deliberating after the charge was given, which was substantially less than the six hours of deliberation that preceded the charge. Nevertheless, we do not find that this necessarily shows coercion, particularly considering that the jury had just spent a night away from deliberations, were presumably refreshed after this time away, and were given the instruction before beginning their morning deliberations. It is just as likely that the new day had brought a different

---

[9] *Burchette v. State*, 278 Ga. 1, 2 (596 SE2d 162) (2004).

[10] *Nowill v. State*, 271 Ga. App. 254, 257-258 (3) (609 SE2d 188) (2005).

[11] *McKee v. State*, 277 Ga. 577, 578 (4) (591 SE2d 814) (2004).

[12] *Romine v. State*, 256 Ga. 521 (1) (350 SE2d 446) (1986).

[13] *Clark v. State*, 271 Ga. App. 534, 538 (4) (610 SE2d 165) (2005).

[14] *Drogan v. State*, 272 Ga. App. 645, 648 (2) (613 SE2d 195) (2005).

perspective to the deliberations. Under these circumstances, we hold that the court's giving of this slightly defective charge was not necessarily coercive. Accordingly, the court did not abuse its discretion in denying Graham's motion for new trial on this ground.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED MAY 6, 2005 —

*Zell & Zell, Rodney S. Zell*, for appellant.
*Paul L. Howard, Jr., District Attorney, Anne E. Green, Assistant District Attorney*, for appellee.