**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 28, 2019**

# In the Court of Appeals of Georgia

A18A1692. MAXWELL v. THE STATE.

MERCIER, Judge.

A jury found Glenn Maxwell guilty of aggravated assault (family violence) in connection with an offense committed against O. I., the mother of his children. Maxwell appeals, contending that the evidence was insufficient to support the conviction entered on the verdict. Finding the contention without merit, we affirm.

The version of OCGA § 16-5-21 (b) (2014) in effect at the time of the charged offense pertinently provided: "A person commits the offense of aggravated assault when he or she assaults . . . (3) [w]ith any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation." OCGA § 16-5-21 (a) (2014) provided: "As used in this Code section, the term 'strangulation' means impeding the normal breathing or circulation of blood of another

person by applying pressure to the throat or neck of such person or by obstructing the nose and mouth of such person." The indictment alleged that Maxwell committed aggravated assault by assaulting O. I. with his "hands, objects which when used offensively against a person are likely to result in strangulation by placing [his] hands around [O. I.'s] throat and applying pressure, therefore impeding the normal breathing or circulation of the blood[.]"

In two similar but separately enumerated claims of error challenging the sufficiency of the evidence "to prove the offense of aggravated assault as it was alleged in the indictment," Maxwell contends that: (1) "[t]he State failed to show that hands were used to apply pressure to the throat which impeded normal breathing or circulation of blood"; and (2) "[t]here was a fatal variance between the manner in which the indictment averred an aggravated assault and the evidence at trial.

Viewed in the light most favorable to support the verdict, *Turbeville v. State*, 268 Ga. App. 88 (601 SE2d 461) (2004), the evidence introduced at trial included the following.[1] On March 12, 2015, a police officer responded to a 911 call regarding a domestic disturbance in an apartment. When the officer arrived at the apartment

---

[1] The trial took place in December 2016.

building, he heard "yelling and screaming going on inside an apartment" and saw a teenaged girl outside holding a baby; the teenager and the baby were crying. The teenager, who was O. I.'s daughter, asked the officer to hurry and pointed to an apartment. The officer entered the apartment through an open door and saw a man sitting on a couch with his arms around a woman. The man, Maxwell, was applying a "bilateral neck restraint" or a "rear choke hold" to the woman, O. I.; the officer testified that such a hold is commonly referred to as a "choke hold." The officer had been trained to use such a hold as a defensive tactic in law enforcement, and had trained other officers in its use. He testified, without objection, that such a hold "can render someone unconscious . . . by restricting the blood flow in [the person's] neck, the blood flow from the - - the oxygen to the brain[,] . . . render[ing] [a person] unconscious until we resuscitate." Using the prosecutor in a demonstration, the officer showed the jury the type of choke hold the officer saw Maxwell applying when he entered the apartment. The officer, who previously served in the military, as a firefighter, and as an emergency medical responder for a fire department, testified (without objection) that the type of choke hold Maxwell was applying was dangerous and, if done improperly, could result in unconsciousness and even death. He added, also without objection, that Maxwell had O. I. "in a hold where he was like leaning

3

back on the couch[,] which is to me that was applying pressure because it's leaning. The slightest lean with that is the quicker someone could be rendered unconscious." According to the officer, "if [that choke hold is] not applied correctly, you could kill someone as far as crushing their trachea." The officer reiterated that O. I. was "being choked" when he entered the apartment, adding that "[s]he pretty much, in my eyes, was useless, which made me hurry." O. I. "was in complete distress." The officer directed Maxwell to release O. I, but he did not, instead telling the officer to "come get her." The officer then "walked over and just grabbed [Maxwell's] hands. . . .I grabbed his hands off of the neck." After "separat[ing]" O.I. from Maxwell, the officer told her "to go stand away from me," handcuffed Maxwell and placed him in the patrol car.

The officer (and backup officers who arrived) questioned O. I. and her two daughters, both of whom were present during the incident. O. I. told the officer that she and Maxwell had argued, then Maxwell "threw her to the couch," struck her, and said he had "been wanting to beat her." O. I. told the officer that her daughters (who were 15 and 13 years old at the time of trial) had attempted to intervene, but Maxwell then struck them and threatened to "beat" them. One of the daughters called 911. A recording of the 911 call was played at trial. According to the officer and one of O. I.'s daughters, a child could be heard in the background of the recording "yelling get

4

off my mama." At the time, O. I. was pregnant with the younger of Maxwell's two children.

At trial, O. I. testified that she physically attacked Maxwell and that he was merely attempting to subdue her, not harm her. She acknowledged that she told the police officer that Maxwell "grabbed [her] and slammed [her] into the couch," but she denied that he placed his hands around her throat or choked her. She denied that she had trouble breathing and that there was "any pressure applied to [her] breathing." O. I. admitted that the statement she made to the police officer at the scene differed from her trial testimony, explaining that she lied to the officer because she was angry with Maxwell. O. I. wrote a letter and an affidavit recanting her earlier statement to police. After an audio recording of O. I.'s visit to see Maxwell while he was in jail was played for the jury, O. I. admitted that Maxwell told her to testify that she was at fault in the incident and that he had not touched her. At the time of the trial, O. I. and Maxwell were "still actively in a relationship."

1. The evidence was sufficient to show that Maxwell committed aggravated assault by "placing [his] hands around [O. I.'s] throat and applying pressure, therefore impeding the normal breathing or circulation of the blood," as alleged in the indictment.

5

As set out above, the officer testified that he saw O. I. "being choked" by Maxwell, saw Maxwell leaning back in a manner that led the officer to believe Maxwell was applying pressure to O. I.'s neck, knew that the choke hold Maxwell was applying could render a person unconscious by restricting blood flow, saw that O. I. was "useless" while Maxwell was applying the choke hold, and grabbed Maxwell's hands from O. I.'s neck. The jury was not required to believe O. I.'s trial testimony to the contrary.

"As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted). It is the function of the jury, not the Court, to resolve conflicts in the testimony and weigh the evidence. *Jackson v. Virginia*, 443 U. S. 307, 319 (II) (B) (99 SCt 2781, 61 LE2d 560) (1979). "[T]he trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." *Walsh v. State*, 303 Ga. 276, 282 (811 SE2d 353) (2018). A jury is authorized to believe a witness's pre-trial statement and reject any portion of his or her testimony at trial. *Gartrell v. State*, 2018 Ga. LEXIS 778, *7. Further,

6

> the State often meets its burden of proving the . . . essential elements of the crime using circumstantial evidence from which the jury may draw reasonable inferences, with the reasonableness of the inferences measured by the evidence supporting them and the evidence undermining them, whichever party elicited that evidence.

*Worthen v. State*, 2019 Ga. LEXIS 22, *22 (3) (e), n. 7. The evidence presented was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Maxwell was guilty of aggravated assault as charged in the indictment. See generally *Johnson v. State*, 247 Ga. App. 157, 160 (2) (543 SE2d 439) (2015), overruled in part on other grounds in *Owens v. State*, 271 Ga. App. 365, 369 (3) (609 SE2d 670) (2005).

2. Maxwell's similar contention, that "[t]here was a fatal variance between the manner in which the indictment averred an aggravated assault and the evidence at trial," is likewise without merit.

He argues that the State failed to prove that he placed his *hands* around O. I.'s throat, as the indictment alleged. He points to O. I.'s demonstration at trial that Maxwell had "his *arm and forearm and elbow* around [her] neck" and to the officer's testimony that Maxwell had his "*arm* around the neck area." (Emphasis supplied.) However, as discussed above, there was evidence from which the jury was authorized

to find that Maxwell placed his hands around O. I.'s throat. For instance, in addition to the above-cited quotations ("around" the neck/neck area), the officer testified that he saw Maxwell choking O. I. and he grabbed Maxwell's "hands off of" O. I.'s neck.

In any event, the distinction Maxwell draws – that the evidence shows he used his *arm* rather than his *hands* – is not material. "Not all differences between an indictment and proof constitute fatal variances." *Lawson v. State*, 278 Ga. App. 852, 853 (2) (630 SE2d 131) (2006) (footnote and punctuation omitted).

> [O]ur courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. Thus, the true inquiry is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. Further, it is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. And only if the allegations fail to meet these tests is the variance fatal.

*Duncan v. State*, 346 Ga. App. 777, 785-786 (4) (815 SE2d 294) (2018) (footnotes and punctuation omitted). Maxwell's defenses at trial were that he did not put his hands around O. I.'s neck and did not apply pressure, that O. I.'s breathing and blood

circulation were not affected by his restraint on her neck, that O. I. was the aggressor, and that Maxwell was justified in "grabb[ing] hold of [O. I.] to calm her." It is clear that the allegations set forth in the indictment informed Maxwell of the aggravated assault charge against him, enabling him to present his defenses thereto and not be taken by surprise; additionally, the allegations were adequate to protect him against another prosecution for the same offense. See generally id.; *Fletcher v. State*, 326 Ga. App. 389, 392-393 (4) (6) (756 SE2d 625) (2014).

Maxwell also asserts that a person could violate OCGA § 16-5-21 (b) (3) (2014) in two ways: either by committing an assault which is *likely* to result in strangulation or by committing an assault that *actually does* result in strangulation. Citing the definition of "strangulation" in OCGA § 16-5-21 (a) (2014),[2] Maxwell argues that "the State averred a completed strangulation with pressure to the neck which impeded the normal breathing or circulation of the blood," and that the State was thus required (but failed) to prove he committed an aggravated assault in that specific manner. See generally *Holman v. State*, 329 Ga. App. 393, 401 (2) (b) (ii) (765 SE2d 614) (2014) ("[A]verments in an indictment as to the specific manner in which a crime was

---

[2]The current version of OCGA § 16-5-21 (2018) does not define "strangulation."

9

committed . . . must be proved as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law.") (citations and punctuation omitted).

But the indictment alleges Maxwell assaulted O. I. with an object which is *likely* to result in strangulation (not which *actually does* result in strangulation). Thus, the State was only required to show that Maxwell had used his hands in a manner likely to result in strangulation. See generally *Hughes v. State*, 266 Ga. App. 203, 205 (3) (596 SE2d 697) (2004). In any event, the jury was authorized to find from the evidence presented that Maxwell placed his hands around O. I.'s throat and applied pressure, thereby impeding her normal breathing or blood circulation. There was no fatal variance between the allegations in the indictment and the evidence introduced at trial. See generally id. at 204 (1).

*Judgment affirmed. Dillard, C. J., and Doyle, P. J., concur.*