## 62141. PAXTON v. THE STATE.

SHULMAN, Presiding Judge.

Appellant was found guilty of armed robbery. The victim, Mrs. Pearl Rhodes, testified that on the morning of August 2, 1979, the appellant entered her house without permission and surprised her in her bedroom. Mrs. Rhodes said that she initially believed the intruder to be the minister of music at her church. Subsequent comparison of pictures of the two men revealed a remarkable similarity in their physical appearance. Mrs. Rhodes realized her error when the intruder threatened her with a gun and demanded that she give him all her money. She had no cash in the house so the robber took her billfold which contained numerous credit cards. Appellant was later arrested in Venice, Florida, when a routine license plate check through an NCIC computer revealed that the car he was driving had been reported stolen from West Virginia. A toy pistol was found in the back seat of the car. A billfold taken from the appellant contained Mrs. Rhodes' credit cards.

1. In two enumerations of error, appellant attacks the denial of his motion to suppress. First, he argues that the initial stop by the Venice, Florida, police officer was illegal because the information output of the NCIC computer was not sufficient to establish cause to arrest him. We disagree.

Although there appear to be no Georgia cases directly addressing the issue of whether information from the National Crime Information Center computer can, without more, establish probable cause for an arrest, the United States Court of Appeals for the Fifth Circuit has considered the issue: "While NCIC printouts are not alone sufficient *evidence* to permit *conviction,* the cases uniformly recognize that NCIC printouts are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest." United States v. McDonald, 606 F2d 552, 553. See also Commonwealth v. Riley, 425 A2d 813. We agree with the Fifth Circuit's assessment of the reliability of the NCIC computer and hold that the police officer in Venice, Florida, had probable cause to believe that appellant was driving a stolen car. It follows that the original stop was lawful and so was appellant's arrest.

Appellant's second complaint pertaining to the denial of his motion to suppress concerns the search of his person conducted upon appellant's arrest. He argues that the search exceeded the limitations set out in Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889). Terry is not applicable to the facts of this case because the appellant was effectively under arrest when the officer handcuffed him. "An arrest is accomplished whenever the liberty of another to come and go as he pleases is restrained, no matter how slight such restraint may be." Clements v. State, 226 Ga. 66, 67 (172 SE2d 600). We have previously concluded that the appellant's arrest was lawful. "Once a defendant has been placed under custodial arrest, police may search his person, incident to that arrest, for weapons or contraband." Graves v. State, 138 Ga. App. 327, 329 (226 SE2d 131). The trial judge correctly denied the appellant's motion to suppress.

2. Mrs. Rhodes made an in-court identification of the appellant after the trial judge had ruled that the photographic lineup shown to her was impermissibly suggestive. Appellant argues that the trial court erred in allowing her to do so. "[C]onvictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U. S. 377, 384 (88 SC 967, 19 LE2d 1247). " '[I]f the judge does not find as a matter of law both that the picture spread was impermissibly suggestive and that there is a substantial likelihood of irreparable misidentification, the in-court identification may be put before the jury.' United States v. Sutherland, 428 F2d 1152, 1155 (5th Cir.)" Payne v. State, 233 Ga. 294, 299 (210 SE2d 775). Having already determined that the photographic lineup was impermissibly suggestive, the trial court had to determine whether there was substantial likelihood of misidentification. "Even if the pre-trial identification is 'tainted' the in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an 'independent origin'. [Cits.]" Code v. State, 234 Ga. 90, 99 (214 SE2d 873). In Mathis v. State, 231 Ga. 401 (202 SE2d 73), an independent origin of identification was shown when the victim was able to give a precise and accurate description of his assailant before he viewed the photographic lineup. Mrs. Rhodes saw the appellant well enough to notice his uncanny resemblance to the minister of music at her church. Her description of the appellant was accurate enough to qualify as an independent identification. "There was sufficient evidence to support a finding that the in-court identification was entirely based upon observations at the time of the robbery and not

induced by the conduct of the lineup." *Redd v. State,* 154 Ga. App. 373, 375 (268 SE2d 423). Therefore, this enumeration of error is without merit.

3. Appellant's earlier conviction on a stolen car charge was introduced into evidence by the prosecution. Appellant contends that this placed his character into issue in violation of Code Ann. § 38-202. *"Moore v. State,* 221 Ga. 636, 637 (146 SE2d 895) (1966) states the general rule that, 'On a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly distinct, independent, and separate from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible, unless there be shown some logical connection between the two from which it can be said that' proof of the one tends to establish the other. [Cit.]' Thus, before evidence of independent crimes is admissible two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter. [Cit.]" *Hamilton v. State,* 239 Ga. 72, 75 (235 SE2d 515). The first criterion is met in the case at bar, since a previous jury found the appellant guilty of stealing the car.

The case of *Emmett v. State,* 195 Ga. 517 (25 SE2d 9), concerns, inter alia, the admissibility of the defendant's auto theft conviction into evidence in his murder trial. The Supreme Court, in *Emmett,* stated: "If the testimony had related merely to the theft of an automobile, its admissibility might be doubtful; but since it concerned the particular automobile that the defendant had in his possession at the time of the homicide, we have no hesitancy in holding that it was admissible for the purpose stated by the judge . . . [T]he offense was a continuing one, and evidence of it would tend to illustrate the defendant's state of mind at the time . . . [Cits.]" Id., p. 538. In the case at bar, an automobile meeting the description of the one occupied by the appellant at the time of his arrest was observed in Mrs. Rhodes' neighborhood on the morning of the robbery. We hold that the admission of the appellant's previous auto theft conviction served to place him at the scene of the crime, to identify him, and to illustrate his bent of mind and course of conduct.

4. A witness for the state was allowed to testify in regard to the appellant's escape and flight from West Virginia authorities while he was awaiting extradition to Georgia for this trial. Appellant contends that this was error because a proper foundation had not been laid to show that he fled because of the charges pending against him in the State of Georgia. "When facts are such that the jury, if permitted to

hear them, may or may not make an inference pertinent to the issue, according to the view which they may take of them, in connection with the other facts in evidence, they are such that the jury ought to be permitted to hear them. [Cits.]" *Johnson v. State,* 148 Ga. App. 702, 703 (252 SE2d 205). In the present case, the trial judge charged, "You members of the Jury may consider whether or not you will draw an inference of guilt from flight or similar acts, if proven. Flight or similar acts, if any, is subject to explanation. You decide the weight to be given to it or whether to draw an inference of a consciousness of guilt or not. You decide if there was flight or similar acts, whether it was due to a sense of guilt or for other reasons. And if for other reasons, no inference hurtful to the defendant should be drawn." This charge is similar to the ones given by the trial court in *Moon v. State,* 154 Ga. App. 312 (5) (268 SE2d 366), and *Anderson v. State,* 153 Ga. App. 401 (265 SE2d 299), which were held to be sufficient instructions to the jury with regard to the proper perspective they should take concerning the defendant's flight. We find no error on this enumeration.

5. Appellant made a motion for a directed verdict of acquittal on the armed robbery charge, contending that the state had, at most, shown robbery by intimidation since there was no evidence to support the inference that he in fact used a real gun.[1] The trial judge denied that motion and the appellant claims that denial was error. We disagree. "It is only when the evidence demands a verdict of not guilty that it is error for the trial court to refuse a motion for a directed verdict of acquittal." *Rolland v. State,* 235 Ga. 808, 812 (221 SE2d 582). That statement applies to the case at bar. There would have to be a complete lack of evidence of the existence of a real gun for a directed verdict of acquittal to be in order. However, Mrs. Rhodes' testimony that the gun used by the appellant had a much longer barrel than did the toy gun found in his car was *some* evidence of the existence of a real gun. It was up to the jury to determine how much weight to give the victim's testimony. The denial of the appellant's motion for a directed verdict was correct.

6. As stated above, Mrs. Rhodes testified that the gun the appellant allegedly pointed at her had a much longer barrel than did the toy pistol that was found in the appellant's car when he was arrested. To accentuate this point, the district attorney obtained a

---

[1] Since this case was tried, the Georgia General Assembly has amended Code Ann. § 26-1902 so as to once again include the language concerning the use of any "replica, article, or device having the appearance of an offensive weapon" as a qualification for armed robbery. However, this amendment did not become effective until April 9, 1981, so it therefore has no bearing on the case at bar.

long-barreled pistol from the police department. This gun was in *no way* connected to the robbery in question or to the appellant. The district attorney showed the gun to Mrs. Rhodes and asked her if it looked similar to the one that the appellant had held on her. She answered affirmatively. The district attorney then tendered the long-barreled gun into evidence over the objection of appellant's counsel. The trial judge overruled the objection and allowed the gun to be admitted. Appellant contends that the trial judge erred in overruling his objection because the gun would tend to confuse the jury as to whether or not the actual weapon was a dangerous weapon. After close scrutiny of the record and extensive research, we agree with the appellant's contentions.

Georgia's case law is replete with holdings that articles which are similar to ones used in a crime but are not identical are nevertheless admissible. See, e.g., *Duvall v. State,* 238 Ga. 325 (232 SE2d 918); *Jung v. State,* 237 Ga. 73 (226 SE2d 599); *Davis v. State,* 230 Ga. 902 (199 SE2d 779); *Kent v. State,* 157 Ga. App. 209 (276 SE2d 881); *Gunn v. State,* 245 Ga. 359 (264 SE2d 862); Moore v. Illinois, 408 U. S. 786 (92 SC 2562, 33 LE2d 706). However, all of these cases are clearly distinguishable on their facts from the case at bar. In *Duvall,* supra, the "similar" gun which was admitted into evidence was found in the defendant's car. In *Jung,* supra, the articles admitted were found on the defendant at the time of his arrest. The *Gunn* case, supra, involved the substitution of a cue stick that had been used in a fight. However, there was *no dispute* as to the fact that a cue stick had actually been used by the defendant. In the case sub judice, there is conflicting evidence as to the *actual existence* of a real gun. *Kent,* supra, involved the admission of clothing. There, the shirt admitted was the one the defendant was wearing when he was arrested. In *Davis,* supra, the court allowed gloves, a shirt, and a knife to be admitted. The gloves and shirt were found on the defendant at the scene of the crime. The particular knife could not definitely be traced to the defendant but the uncontroverted fact remained that the *defendant did use a knife.* The same distinction is true in the U. S. Supreme Court decision in Moore v. Illinois, supra. There the trial judge allowed a .16-gauge shotgun found in the defendant's possession to be admitted when there was evidence that the crime was actually committed with a .12-gauge shotgun. But it was undisputed that a shotgun of some type was used.

In the case at bar, the prosecutor arbitrarily produced a weapon which he admitted had no direct connection whatsoever to the present trial. Some language in *Jung v. State,* proves enlightening: "Where there is evidence that the perpetrator of a robbery wore certain clothing and carried a pistol, similar items *belonging to or*

*found in the possession* of the defendant are properly admitted for the jury to consider. [Cits.] . . . [I]t appears *without dispute* that the crime was committed with a pistol, and it would make no material difference whether or not the pistol found on the defendant was the particular gun with which the crime was committed." (Emphasis supplied.) Id., p. 74. These passages reiterate the primary deviation of the case at bar from others that are similar. The pistol was not found at the scene of the crime or in the appellant's possession nor was it undisputed that such a gun ever existed.

Research has not produced a Georgia case affirming a conviction in a case in which the trial court admitted into evidence a weapon not in any way associated with the crime or the defendant. For instance, in *Hill v. State,* 211 Ga. 683 (88 SE2d 145), a murder case in which the victim was killed with a knife, the trial court admitted *testimony* concerning a knife purchased by the prosecution and used for identification purposes at trial, but correctly upheld defense counsel's objection to the admission of the knife itself into evidence. In the present case, the gun *was* admitted into evidence. The case that appears to be most analogous to the case at bar is Young v. Price, 442 P2d 67, a 1968 holding of the Supreme Court of Hawaii. That case involved an action by a pedestrian for injuries sustained in a fall on a sidewalk across which the defendants had stretched a hose. Defendants argued that they had placed a yellow cone and a red flag at the scene of the accident as a safety precaution. The plaintiff denied the existence of the cone and flag. The defendants entered into evidence replicas of the disputed yellow cone and red flag. The Supreme Court of Hawaii held this to be reversible error stating that where there is conflict in the evidence as to the existence of physical objects, the credibility of witness' testimony is for the jury to decide, and the introduction of replicas of disputed evidence is prejudicial. Young v. Price, supra. In the present case, the victim testified that the appellant used a long-barreled gun. No real gun was ever found but a toy gun was found in the appellant's car at the time of his arrest. This created a dispute as to the existence of the long-barreled gun. According to the theory enunciated in Young, supra, a replica of the disputed pistol should not have been admitted into evidence; the jury should have relied solely on the victim's testimony.

Young v. Price, supra, is a civil case. We believe that a criminal case requires even greater scrutiny by our courts to insure that the defendant's individual rights are not overrun. Therefore, we adopt the reasoning articulated in Young.

It is not our intention to undermine the efforts of our law enforcement officers or to tie a prosecutor's hands behind his back. We simply believe that the district attorney crossed the line of proper

evidence by causing the admission of the gun into evidence; its subsequent presence in the jury room was far too prejudicial to condone. Appellant is entitled to a new trial.

7. Appellant's final enumeration of error concerns the sentencing of him by a different judge than the trial judge. Since this situation is not likely to reoccur on retrial, a discussion of this issue is unnecessary.

*Judgment reversed. Birdsong and Sognier, JJ., concur.*

DECIDED SEPTEMBER 17, 1981 —
REHEARING DENIED OCTOBER 13, 1981 —

*Frank Grimsley,* for appellant.
*Gary C. Christy, District Attorney,* for appellee.