## A06A1279. SWINT v. THE STATE.
### (632 SE2d 712)

BLACKBURN, Presiding Judge.

Following a jury trial, Frederick Swint appeals his convictions of rape, criminal attempt to commit burglary, two counts of aggravated assault, two counts of burglary, and two counts of public indecency. Specifically, he contends (1) his trial counsel provided him with ineffective assistance, (2) the trial court erred in not granting a mistrial upon introduction of improper character evidence, and (3) the evidence was insufficient to support his conviction of attempted burglary. We disagree and affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." *Eady v. State*.[1]

So viewed, the evidence shows that on three separate occasions in December 2003, as Swint drove in his red Ford Probe, he exposed himself to Marilyn Kittle while he masturbated as she drove next to him along the road. In March 2004, along the same stretch of road, Swint exposed himself to Jerri Stump while he masturbated as she and her daughter drove in the lane next to him. Both Kittle and Stump reported the incidents to police, but Swint was not apprehended at that time.

At 1:30 a.m., in June 2004, Shirlee Hiner heard a loud bang on her door. Soon thereafter, Swint appeared at her bedroom door, momentarily ducking back to reenter after he put on a mask. As Hiner screamed at Swint to get out, Swint pushed her down on her bed and told her to lie still, threatening her with a knife. Hiner continued to fight Swint, and, when she called out a neighbor's name, Swint released Hiner and fled.

Also in June 2004, as Valerie Ayers opened her store one morning, Swint came in an unlocked door and attacked Ayers, forcing her at knifepoint to lie down and take her underwear off. Swint then

---

[1] *Eady v. State*, 256 Ga. App. 696 (569 SE2d 603) (2002).

forced Ayers to have intercourse with him, cut off a lock of her hair, and ordered Ayers not to tell anyone, threatening her family. As soon as Swint left, Ayers called 911 and was taken by police to the hospital for a rape evaluation. A swab from the evaluation contained DNA matching Swint's.

Finally, in late June 2004, Maryanna Boykin was working the night shift at a hotel desk when she was followed outside the office by a man wearing a mask. After she ran, the man stopped following her and fled in a red Ford Probe. Boykin called police, who took a report from her and then left. Later that night, the same car returned and the man in the mask came to the office door, where Boykin was, shaking it violently. Believing the masked man was there to rob her, Boykin called 911, and the man fled. Later, during a police investigation, Swint admitted to police that he went to the hotel wearing a mask at the time of the disturbance.

Following a trial, a jury found Swint guilty of rape, criminal attempt to commit burglary, two counts of aggravated assault, two counts of burglary, and two counts of public indecency. Swint now appeals his convictions.

1. Swint contends that his trial counsel rendered him ineffective assistance. However, because Swint did not raise this issue in the trial court, he waived consideration of this issue on appeal.

"It is a well established rule that any allegation of a violation of the right to counsel should be made at the earliest practicable moment." (Punctuation omitted.) *Landers v. State*.[2] Here, following his trial, at which he was represented by counsel, Swint filed a pro se motion for new trial (which did not claim ineffective assistance of counsel) and a motion for the appointment of new appellate counsel. The trial court delayed ruling on Swint's motion for new trial and appointed new appellate counsel, who did not amend Swint's motion for new trial. More than four months after appointing new appellate counsel, the trial court, after a hearing (for which we have no transcript), denied Swint's motion for a new trial.

The Georgia Code is clear that a motion for new trial may be amended any time before the ruling thereon. OCGA § 5-5-40 (b). Therefore,

> [a]lthough trial counsel cannot reasonably be expected to assert or argue his own ineffectiveness in a motion for new trial, an attorney who is appointed to replace trial counsel before the ruling on such motion should raise the issue in an

---

[2] *Landers v. State*, 236 Ga. App. 368, 370 (3) (511 SE2d 889) (1999).

amended motion for new trial and request a hearing on the amended motion; otherwise, he risks waiving the issue.

*Landers v. State,* supra, 236 Ga. App. at 370 (3). Because Swint's appellate counsel had more than four months to raise the ineffective assistance claim in an amended motion for new trial or in the hearing and by his own admission he failed to do so, we will not consider such claim raised for the first time on appeal. See id. at 371 (3); *Williams v. State;*[3] *Mullins v. State.*[4]

2. Swint next contends that the trial court erred in failing to grant a mistrial when the State improperly elicited evidence putting Swint's character in issue. We disagree.

At trial, the State elicited the following testimony from a police officer who interviewed Swint as part of the officer's investigation of the incident at the hotel:

Q. When [Swint] admitted to [being at] the hotel, what was his demeanor?
A. He was very nervous the whole interview. He was very concerned. He made the statement I would never hurt, you know, anybody and even asked for some help.
Q. When you say he asked for some help, what do you mean, what kind of help did he ask for?
A. He didn't specify. The way I interpreted it was that he had a problem.
Defense counsel: Objection.
The court: He didn't specify. That's enough. What he inter-preted is not —
Prosecutor: Yes, sir.
. . .
Q. What were you all talking about when he said he needed help?
A. We were talking about his history of sexual offenses and this incident that happened at the hotel.

Immediately after this exchange, defense counsel asked to make a motion, and, after excusing the jury to the jury room, the court heard argument on defense counsel's motion for a mistrial based on the officer's testimony that put Swint's character in issue. The court denied the defense's motion, but gave the jury curative instructions

[3] *Williams v. State,* 270 Ga. App. 371, 372 (2) (606 SE2d 594) (2004).
[4] *Mullins v. State,* 267 Ga. App. 393, 399 (5) (599 SE2d 340) (2004).

to "decide this case based on the defendant's conduct that you hear in this trial and nothing else," and to disregard the prior reference to Swint's "history."

Swint now argues that the trial court erred in denying his motion for a mistrial.

> Whether to grant a mistrial based on improper character evidence is within the discretion of the trial judge. In reviewing the trial court's decision, an appellate court may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety. . . . A trial court's ruling on a motion for mistrial will not be disturbed by the appellate courts unless it appears that there has been a manifest abuse of discretion and that a mistrial is essential to the preservation of the right to a fair trial.

(Punctuation omitted.) *Turbeville v. State.*[5]

By the time that the jury heard the above exchange, the State had already presented competent evidence of Swint masturbating in public on four separate occasions, attempting to rape Hiner, and raping Ayers. Noting the prior evidence, the trial court determined that a mistrial was not warranted and gave a curative instruction to the jury. No additional references to Swint's "history" were made during trial. In light of the evidence of Swint's sexual crimes already properly before the jury and the curative instruction by the trial court, we discern no manifest abuse of discretion by the trial court in denying Swint's motion for a mistrial. See *Martin v. State.*[6] Accordingly, this enumeration is without merit.

3. Finally, Swint contends that the evidence was insufficient to support his conviction of criminal attempt to commit burglary at the hotel. We disagree.

In reviewing the sufficiency of the evidence on appeal from a criminal conviction, we will affirm a finding of guilt unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia.*[7]

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters . . . any building."[8] "A person commits the offense of criminal

---

[5] *Turbeville v. State*, 268 Ga. App. 88, 94 (7) (601 SE2d 461) (2004).

[6] *Martin v. State*, 240 Ga. App. 901, 902-903 (1) (525 SE2d 728) (1999).

[7] *Jackson v. Virginia*, 443 U. S. 307, 324 (III) (C) (99 SC 2781, 61 LE2d 560) (1979).

[8] OCGA § 16-7-1 (a).

attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[9]

Here, viewed in the light most favorable to the verdict, the evidence shows that Swint, who had a history of sexual assaults, went to the hotel alone, late at night, wearing a mask. After visiting the hotel parking lot once before in the evening, and following the female hotel employee until she ran, he approached the office door where that same lone female hotel employee had returned to work, and attempted to open the locked door. When the locked door would not open, he continued to shake the door violently, still wearing the mask. When Swint saw the hotel employee pick up the phone and dial 911, he fled. In light of this evidence, the jury was authorized to conclude that Swint took a substantial step toward entering the hotel office (without authority) to commit a sexual felony therein. See *Adams v. State*[10] (substantial steps toward burglary included wearing a mask).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JUNE 13, 2006.

*Ricardo G. Samper*, for appellant.
*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, Assistant District Attorney*, for appellee.

---

[9] OCGA § 16-4-1.
[10] *Adams v. State*, 178 Ga. App. 261, 263 (2) (b) (342 SE2d 747) (1986).