A08A0047. RUDNITSKAS v. THE STATE.
(662 SE2d 729)

ANDREWS, Judge.
Robin Kirk Rudnitskas, convicted by a jury of criminal attempt to commit burglary, appeals from the trial court's denial of his motion for new trial, contending that replica evidence was improperly admitted, the evidence was legally insufficient, and that his trial counsel was ineffective. Finding no error, we affirm.

1. We first consider the second enumeration of error, which challenges the trial court's denial of the motion for new trial based on the insufficiency of the evidence. On appeal from a criminal conviction, we view the evidence in a light favorable to the verdict, and Rudnitskas no longer enjoys a presumption of innocence. See *McGee v. State*, 287 Ga. App. 460 (651 SE2d 546) (2007). We neither weigh the evidence nor resolve issues of witness credibility, but determine only whether the evidence was sufficient to allow a rational trier of fact to find the accused guilty beyond a reasonable doubt. See id.

So viewed, the evidence was that Rudnitskas lived with his sister next door to Tammy Roberson in Newton County. In May 2005,

Roberson had fallen and broken both her legs, requiring six days of hospitalization and then living with her parents south of Atlanta for five months while she recovered. Roberson had arranged for two friends to look after her house and had given them keys. The house contained furniture, electronics, and a valuable collection of Gone With The Wind memorabilia. Neither Rudnitskas nor his sister had keys or had been asked to look after Roberson's house. Roberson returned to her Newton County home on December 7, 2005, still on crutches. On December 9, Roberson was lying on her couch watching television with her legs propped up on pillows. Her house was a ranch with a screened in back porch and fenced in backyard. On the porch, the upper half was screened and the lower half was covered with wood siding. The back porch was not visible from the front of her house or from the house where Rudnitskas and his sister lived.

While watching television, Roberson heard knocking on the sliding glass door going onto the back porch, which was about 20 feet away. She got up and slowly went to the door. When she got there, she saw Rudnitskas crouched down at the sliding glass door with a crowbar in his hand beating the bottom track of the door. She described the item in Rudnitskas's hand as a crowbar, black, 12 to 18 inches long, and folded around on the end with a fork in the end.

Roberson, who worked in a bank, had received extensive training on how to handle bank robberies, terrorist acts, and things of that nature. Upon seeing Rudnitskas, she was extremely afraid, having lived in the house for 12 years with no problems and then finding her neighbor, whom she only knew by sight, with a crowbar trying to get into her house.[1] Through the glass door, Roberson asked Rudnitskas "[w]hat the hell are you doing?" Rudnitskas, appearing startled, responded "[o]h, oh, you're home, you're home." Rudnitskas then asked if he could borrow her shovel and, although she had never loaned him anything before, she told him to take it and go. Rudnitskas then said "[o]h, I just wanted to make sure you were okay. I saw movement." When Rudnitskas left, he did not take the shovel.

Roberson called the police and Deputy Kent responded. After talking with her, he went next door to speak with Rudnitskas. Kent knocked on the door and announced "Sheriff's Department." When Rudnitskas answered the door, Kent asked him "[w]hat went on next door here?" Rudnitskas responded "I didn't have a crowbar in my hand. I had a screwdriver in my hand."

Lieutenant Crum, the investigator, was summoned to the scene and also spoke to Roberson. Rudnitskas was taken to the sheriff's

---

[1] After the incident, Roberson threw up because of her fright.

department where Crum advised him of his *Miranda* rights and interviewed him. Initially, Rudnitskas said he had jumped over the fence and gone to the rear of Roberson's house because he had seen movement. He said he returned to his house and got a screwdriver he described as "long and black with a curve on the end of it" with which he was digging up ant hills in his yard. Then, he decided he needed a shovel and returned to Roberson's house, again hearing sounds. Later in the interview, Rudnitskas said he first heard his dogs barking in the backyard. They were looking toward Roberson's house and he went to investigate. Then he said he needed to borrow a shovel and that was why he went over. Later in the interview, he again said he thought someone was in the house and he was going to go over there, being a third degree black belt, and take care of the situation. Asked if he was trying to use the pry bar to open the sliding glass door to gain entry, Rudnitskas first said no, but later said he was trying to get the door on its tracks so he could open it.[2] Finally, at the end of the interview, Rudnitskas said "[I] ain't scared of going to jail. The place is like a motel."

The evidence was sufficient to authorize the jury to conclude that Rudnitskas took a substantial step toward entering Roberson's home to commit a felony. See *Swint v. State*, 279 Ga. App. 777, 780 (3) (632 SE2d 712) (2006).

2. In his first enumeration of error, Rudnitskas argues that the trial court improperly denied his motion for new trial based on the admission of the replica crowbar.

No crowbar was found by police and an employee of the district attorney's office purchased one from a local hardware store. The State requested that it be allowed to use the crowbar as demonstrative evidence and the trial court agreed, over objection.

Rudnitskas relies upon *Paxton v. State*, 160 Ga. App. 19 (285 SE2d 741) (1981) for his argument.

> A weapon that was not actually used in the commission of an offense, but which is similar to that which was so used is generally admissible into evidence. *Sinkfield v. State*, 231 Ga. 875, 876 (2) (204 SE2d 588) (1974). See also *Cauley v. State*, 206 Ga. App. 233, 234 (1) (424 SE2d 822) (1992); *Walker v. State*, 186 Ga. App. 61, 62 (2) (366 SE2d 400) (1988); *Fields v. State*, 167 Ga. App. 816, 817 (2) (307 SE2d 712) (1983). "Where an article is introduced as a standard of comparison, preliminary evidence showing that in essential respects it offered a trustworthy standard of comparison is

---

[2] According to Roberson, the door was on its tracks.

sufficient to render it admissible." [Cit.] *Mitchell v. Schofield's Sons Co.*, 16 Ga. App. 686, 688 (2) (85 SE 978) (1915). Appellant's reliance upon *Paxton*[, supra at] 23 (6) is misplaced. The defendant in *Paxton* was charged with armed robbery during that period of time when armed robbery could not be committed with any " 'replica, article, or device having the appearance of an offensive weapon.' " Thus, proof that the defendant used a real gun was necessary in order to establish his guilt of armed robbery. Because only a toy gun was ever found in the defendant's possession, there was a dispute as to the actual existence of a real gun and as to the defendant's guilt of armed robbery. *Paxton*, supra at 23-24 (6). Under these circumstances, it was reversible error to admit a real gun into evidence, thereby impermissibly bolstering the State's case and prejudicing the defense.

*Boyd v. State*, 264 Ga. 490, 491 (2) (448 SE2d 210) (1994). See also *Parker v. State*, 226 Ga. App. 462, 463 (4) (486 SE2d 687) (1997).

Here, Rudnitskas acknowledged having a tool which he described in remarkably similar terms to the description given by Roberson. Therefore, the only question was whether it was, as Rudnitskas variously described it in his testimony, a screwdriver, "flat bar," or "roofing bar," or a crowbar as stated by Roberson. Whatever it was, he was accused of using it to attempt to break into Roberson's home, and there was no error in the trial court's allowing the use of the replica crowbar.

3. Finally, Rudnitskas contends that his trial counsel rendered ineffective assistance.

To prevail on a claim of ineffective assistance of counsel, it must be shown both that counsel's performance was deficient and that but for this deficiency, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim. *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous. [Cit.]" *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

(a) Rudnitskas contends that, although trial counsel objected to the use of the crowbar in an unrecorded pretrial conference with the trial court, which was overruled, he erred in not objecting to the crowbar when it was tendered into evidence. As discussed in Division 2, however, the crowbar was admissible and any objection would have been overruled. Therefore, he has failed to satisfy the second

prong of *Strickland*, supra.

(b) While testifying, Deputy Kent, when asked if he arrested Rudnitskas, stated that he "found out that [Rudnitskas] had a warrant." Counsel for the State immediately interrupted the deputy and proceeded to other questions. Rudnitskas contends that trial counsel erred in not objecting to this evidence, which improperly placed his character at issue.

> "Mere mention that a defendant has been in jail falls short of placing his character at issue." [*Taylor v. State*, 272 Ga. 559, 561 (2) (c) (532 SE2d 395) (2000).] And, "[w]hen a witness gives a non-responsive answer to a question impacting negatively on the defendant's character, this does not place the defendant's character in issue." [(Punctuation omitted.) *Nelson v. State*, 204 Ga. App. 409, 410 (2) (419 SE2d 502) (1992).] Here, [appellant's] "character was not placed into issue because the witness gave a non-responsive answer to the prosecutor's question. The State did not directly solicit the information and it does not appear that the State anticipated the response." [Id.]

*Jennings v. State*, 285 Ga. App. 774, 778-779 (4) (648 SE2d 105) (2007).

Even though trial counsel stated at the motion for new trial hearing that his failure to object to the deputy's statement was a mistake, objecting would not have changed the outcome of the trial, since that reference alone did not place Rudnitskas's character in issue. *Jennings*, supra at 778-779 (4).

(c) Failure to object to the admission of Rudnitskas's statement to Lieutenant Crum is also claimed to have been ineffective.

Rudnitskas testified at trial and acknowledged that he was read his *Miranda* rights and agreed to be interviewed. Therefore, there has been no showing that any such motion would have been granted by the trial court and there was no error.

(d) Rudnitskas contends that trial counsel erred in failing to request an instruction to the jury on the lesser included offense of criminal trespass.

Trial counsel explained that his strategy was based on Rudnitskas's contention that he went over to Roberson's house to investigate suspicious noises, a lawful purpose, and that to request a charge on criminal trespass would have been inconsistent with this theory. This was a reasonable strategy on trial counsel's part and no error has been demonstrated. See *McKee v. State*, 277 Ga. 577, 579 (6) (591 SE2d 814) (2004).

(e) Finally, Rudnitskas contends that trial counsel's failure to

make a motion for directed verdict was ineffective. The failure to seek a motion for directed verdict was not deficient performance because, as noted in Division 1, the evidence presented by the State was sufficient to authorize Rudnitskas's conviction. *Nelson v. State*, 283 Ga. 119, 121 (2) (a) (657 SE2d 201) (2008).

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED MAY 7, 2008 —
RECONSIDERATION DENIED MAY 28, 2008.

*Kenneth W. Sheppard*, for appellant.

*W. Kendall Wynne, Jr.*, District Attorney, *Layla V. Hinton*, Assistant District Attorney, for appellee.