A08A2220. DURHAM v. THE STATE.
(673 SE2d 80)

MIKELL, Judge.

J'Shawn Lemar Durham ("Durham") and his brother, J'Quan Levar Durham ("J'Quan"), were jointly indicted for criminal attempt to commit burglary (Count 1). Durham also was charged with two counts of giving a false name to a law enforcement officer. J'Quan's trial was severed, and Durham's trial resulted in his conviction on all counts. He was sentenced to serve ten years on Count 1 and twelve months concurrent on Count 2. Count 3 was merged with Count 2. On appeal from the denial of his motion for new trial, Durham contends that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of attempted burglary. We disagree and affirm.

"The standard of review for the denial of a motion for directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction."[1] Under that standard,

[w]e view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the

---

[13] Peoples made the same argument to the trial court.
[1] (Citation omitted.) *Hester v. State,* 282 Ga. 239, 240 (2) (647 SE2d 60) (2007).

defendant guilty of the charged offense beyond a reasonable doubt.[2]

Properly viewed, the evidence adduced at trial shows that on August 21, 2002, Sharonda Lavant and her sister were asleep on Lavant's couch when they were awakened by a knock on the front door of her apartment. Lavant looked through the peephole and saw two men who were unfamiliar to her. One man was knocking on her door, and the other man was knocking on her next door neighbor's door. Eventually the knocking stopped, and Lavant went to her kitchen window and watched the men walk around the apartment of her neighbor, Lorraine Rodrigues. Lavant overheard the men talking; they were discussing how to get into Rodrigues's apartment. Lavant heard Durham say that they could get in through the window. When the men walked onto Rodrigues's porch, Lavant called the police. While on the phone with the authorities, Lavant heard a window breaking in Rodrigues's apartment.

The police officer who responded to the scene, Jeffrey Richter, testified that Lavant gave him a description of the suspects, and they were apprehended a short time later. The suspects were brought to Lavant for a showup identification. Lavant identified them on the scene, and she identified Durham at trial. At the scene, Richter spoke to Durham, who stated that his name was James Smith. Richter walked around Rodrigues's apartment, observed the broken window, and found a rock at the base of it. The rock was admitted into evidence.

Rodrigues testified that she was at work on the day of the incident. When she arrived at home, she discovered that her living room window was broken and that the screen had been cut. The screen was in the middle, with a storm window on the outside and regular glass on the inside. Both window panes were broken.

Durham was transported to the police station, where he gave a statement to detective Charles Moore. The videotaped statement was played for the jury. It has not been included in the record on appeal. Moore testified, however, that Durham stated that he was going into the apartment to get money. Durham admitted on cross-examination that during the interview, he stated that he and his brother were "in it 50-50."

Durham testified on direct that he became angry with J'Quan over a $200 debt; and that he picked up a rock and threw it at J'Quan, but J'Quan moved, and the rock struck the window. According to Durham, he panicked and fled because he could not afford to

---

[2] (Citation omitted.) *Lee v. State*, 281 Ga. App. 479, 479-480 (1) (636 SE2d 547) (2006).

pay for the window. The state introduced evidence showing that the window was situated behind an air conditioning unit and a fence, and Durham testified that the rock went over the fence and behind the unit.

"A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[3] "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[4] Durham argues that the evidence of his attempt to commit burglary was circumstantial and did not foreclose the reasonable hypothesis that he inadvertently broke the window while fighting with his brother. It is true that, in order to support a conviction based entirely upon circumstantial evidence, the proved facts "shall exclude every other reasonable hypothesis save that of the guilt of the accused."[5] But in this case, the state presented circumstantial and direct evidence. Durham's inculpatory statement that he intended to enter Rodrigues's apartment to get money is direct evidence of his guilt.[6] The statement, combined with Lavant's testimony that she heard Durham and his brother discuss entering the apartment through the window, saw them on Rodrigues's porch, and then heard the window breaking, provide ample evidence to support Durham's conviction of attempted burglary beyond a reasonable doubt. Although Durham denied his intent to enter the apartment, "[t]he question of intent to commit burglary is for the determination of the jury under the facts and circumstances proved . . . [, and] it is axiomatic that the credibility of the witnesses is solely a jury question. Questions of reasonableness are likewise issues for jury determination."[7] "The evidence was sufficient to authorize the jury to conclude that [Durham] took a substantial step toward entering [Rodrigues's] home to commit a felony."[8]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

---

[3] OCGA § 16-7-1 (a).

[4] OCGA § 16-4-1.

[5] See OCGA § 24-4-6.

[6] See, e.g., *Lemon v. State*, 293 Ga. App. 488 (667 SE2d 654) (2008) (defendant's admission that he placed victim in a "headlock" was direct evidence of involuntary manslaughter).

[7] (Citations and punctuation omitted.) *Legg v. State*, 204 Ga. App. 356, 357 (1) (419 SE2d 151) (1992).

[8] *Rudnitskas v. State*, 291 Ga. App. 685, 687 (1) (662 SE2d 729) (2008), citing *Swint v. State*, 279 Ga. App. 777, 781 (3) (632 SE2d 712) (2006).

DECIDED JANUARY 27, 2009.

*Michael S. Marr*, for appellant.
*Daniel J. Porter, District Attorney, Wesley C. Ross, Assistant District Attorney*, for appellee.