**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**October 4, 2012**

# In the Court of Appeals of Georgia

A12A1615. ANTHONY v. THE STATE.

BARNES, Presiding Judge.

A Coweta County jury found Jesse Louis Anthony guilty of criminal attempt to commit burglary, and the trial court denied his motion for new trial. On appeal, Anthony challenges the sufficiency of the evidence to convict him. He also contends that the trial court erred by not permitting his mother to testify that he suffered from a mental infirmity, and by failing to charge the jury on the lesser included offense of criminal trespass. Additionally, Anthony argues that his trial counsel rendered ineffective assistance. For the reasons set forth below, we affirm.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict. *Hayes v. State*, 276 Ga. App. 268, 269 (1) (623 SE2d 144) (2005). So viewed, the evidence

showed that around noon on January 22, 2010, a neighbor driving home from work saw an unfamiliar man, later identified as Anthony, emerge from between two houses down the street from where the neighbor lived in Coweta County. The neighbor then saw Anthony go onto the front porch of the victim's house. No one appeared to be home at the residence, which recently had been sold to the victim. A table saw and other tools left inside the house by contractors could be seen from outside. According to the neighbor, at some point there had been a "for sale" sign outside of the victim's house, but he was not sure whether it was still there on January 22nd.

Once on the front porch of the victim's house, Anthony tried to open the front door without first ringing the doorbell or knocking on the door. After unsuccessfully trying to open the front door, Anthony went over to a window on the porch, turned facing the street, placed his fingers in a crack between the bottom of the window and the window frame, and tried to lift the window.

The neighbor, who had watched Anthony try to open the door and window, drove up to the victim's house and yelled out to Anthony, "What the 'bleep' are you doing?" Anthony responded by running down the street. The neighbor got out of his car, chased Anthony, and tackled him. Another neighbor dialed 911, and the police arrived shortly thereafter.

Anthony was arrested and taken to the sheriff's department, where he agreed to an interview with the investigator after being advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). The investigator noticed that Anthony smelled strongly of alcohol. Anthony claimed that his family was being evicted from its residence, that he had been at the victim's house because he was looking for a place for him and his mother to live, and that he had done nothing more than look through a window and knock on the front door.

Anthony was indicted for criminal attempt to commit burglary in that he attempted to enter the victim's house to commit a theft. At the jury trial, the neighbor who witnessed what had transpired and who had tackled Anthony testified to the events as set out above. He further testified that Anthony never said anything to him about trying to find a place to live and never claimed to him that the incident had been a misunderstanding. The neighbor said that, instead, Anthony had threatened him by claiming that he would have someone come and "take care" of the neighbor in retaliation for chasing and subduing him.

In addition to the neighbor, the police investigator testified about his interview of Anthony at the sheriff's department after he had been arrested. A video recording of the interview was introduced into evidence and played for the jury.

3

The victim whose house Anthony had attempted to enter also testified. According to the victim, he had recently purchased the house, and he and his wife were still in the process of moving their belongings into the house from out-of-state when the incident occurred. The victim testified that he had been splitting his time between his home out-of-state and his new home in Coweta County, and he slept in the house on an air mattress on the nights when he was there. He also noted that contractors had left construction equipment in the house. The victim had never seen Anthony previously and had never given him permission to enter his house, and he denied that the house still had a "for rent" or "for sale" sign outside on the day of the incident.

Anthony elected not to testify at trial, but he presented the testimony of his mother and stepfather to support the defense theory that he had simply been looking for a house for him and his family to rent or buy. His mother and stepfather testified that at the time of the incident, the family had been in the process of being evicted from their home and had been looking for a new place to live for several months. However, Anthony's mother conceded on cross-examination that the family had in fact closed on a new house on the same day that the incident occurred, and that Anthony had been made aware of the closing the previous night.

4

To show that Anthony lacked the requisite criminal intent, the defense wanted his mother also to testify that Anthony suffered from a mental infirmity. But Anthony had chosen not to raise an insanity defense, as the State pointed out to the trial court in opposing the introduction of witness testimony about his mental condition. The trial court ruled in favor of the State and prohibited the mother from testifying that Anthony possessed a mental infirmity.

After hearing all of the testimony and reviewing the video recording of the police interview, the jury convicted Anthony of the charged offense. Anthony moved for a new trial, contending, among other things, that his trial counsel had been ineffective. After conducting an evidentiary hearing, the trial court denied Anthony's motion. This appeal followed.

1. Anthony challenges the sufficiency of the evidence, contending that there was insufficient circumstantial evidence that he intended to commit a theft in the victim's house. He argues that the evidence supported a reasonable hypothesis that he was simply at the property to look it over as a possible place to live. He notes in his brief that he did not have a bag or burglary tools with him on the day in question, that his mother and stepfather provided testimony confirming that the family had been looking for a new place to live, and that there was evidence suggesting that a "for

sale" sign may have still been up outside the residence and that the house appeared to be unoccupied at the time.

A person commits the offense of burglary by "entering or remaining in a dwelling house of another or building without authority and with the intent to commit a . . . theft therein." *Hopkins v. State*, 309 Ga. App. 298, 300 (1), n. 5 (709 SE2d 873) (2011). See OCGA § 16-7-1 (b). "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1.

As discussed previously, there was witness testimony at trial that Anthony emerged from between two houses in the neighborhood, attempted to open the front door of the victim's house and force open a window, and tried to flee upon being seen by the neighbor. Additionally, there was testimony that construction equipment inside the victim's home could be seen from outside, that there was no "for rent" or "for sale" sign outside the home at the time of the incident, and that Anthony did not have permission to enter the victim's house. Lastly, there was evidence that Anthony's family had in fact closed on a new home on the very day of the incident in question, and that Anthony had known that the closing was to occur. This combined evidence was sufficient to authorize a rational jury to find that Anthony had acted with the

6

intent to commit a theft inside the victim's house and had taken a substantial step toward entering the house for that purpose, and, therefore, to find him guilty beyond a reasonable doubt of criminal attempt to commit burglary. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Rudnitskas v. State*, 291 Ga. App. 685, 686-687 (1) (662 SE2d 729) (2008) (witness testimony regarding defendant's effort to pry open sliding glass door of victim's house supported conviction for criminal attempt to commit burglary).

While the defense presented a different theory of events and claimed that Anthony did not act with the intent to commit a theft, it was the jury's province to assess witness credibility, resolve the conflicts in the evidence, and determine whether there was a reasonable hypothesis of innocence favorable to Anthony. See *Clarke v. State*, __ Ga. App. __, __ (1) (a) (Case No. A12A0924, decided Aug. 10, 2012); *Biggins v. State*, 299 Ga. App. 554, 556 (1) (683 SE2d 96) (2009). "As a general rule the [S]tate must, of necessity, rely on circumstantial evidence in proving intent. And the fact that the defendant may have failed in accomplishing his apparent purpose does not render a finding of criminal attempt to commit burglary improper." (Citations and punctuation omitted.) *Murray v. State*, 187 Ga. App. 747 (371 SE2d 272) (1988). See *Durham v. State*, 295 Ga. App. 734, 736 (673 SE2d 80) (2009).

7

Accordingly, Anthony cannot succeed on his challenge to the sufficiency of the evidence to support his conviction.

2. Anthony next contends that the trial court erred by prohibiting his mother from testifying that he possessed a mental infirmity, which he contends was relevant to showing that he did not have the requisite criminal intent at the time of the alleged offense. "The . . . exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." (Citation and punctuation omitted.) *Hayes*, 276 Ga. App. at 270 (2). Under the circumstances of this case, we conclude that no abuse of discretion can be shown by the exclusion of the mother's testimony.

Anthony declined to pursue a defense of not guilty by reason of insanity, or to contend that he was guilty but mentally ill or guilty but mentally retarded.[1] See OCGA §§ 16-3-2; 16-3-3; 17-7-131 (b). And "mental abnormality, unless it amounts to insanity, is not a defense to a crime." (Citation and punctuation omitted.) *State v.*

---

[1] Before trial, a physician had evaluated Anthony and determined that he was mentally competent to stand trial.

8

*Abernathy*, 289 Ga. 603, 607-608 (4) (a) (715 SE2d 48) (2011).[2] See *Wallin v. State*, 285 Ga. App. 377, 383 (b) (646 SE2d 484) (2007) (noting that "a person is not legally insane simply because he suffers from schizophrenia or a psychosis") (citation omitted). Given Anthony's failure to raise an insanity defense or to contend that he was guilty but mentally ill or mentally retarded, the trial court acted within its discretion in concluding that the testimony of Anthony's mother was irrelevant to the issue of whether Anthony acted with the criminal intent necessary to determine guilty. See *Paul v. State*, 274 Ga. 601, 603 (2) (555 SE2d 716) (2001); *Lewandowski v. State*, 267 Ga. 831, 832 (2) (483 SE2d 582) (1997); *Selman v. State*, 267 Ga. 198, 200 (3) (475 SE2d 892) (1996); *McDowell v. State*, 269 Ga. App. 475, 476 (1) (604 SE2d 575) (2004). Compare *Porter v. State*, 243 Ga. App. 498, 503-505 (5), 506-508 (532 SE2d 407) (2000) (expert testimony regarding defendant's psychological condition was erroneously excluded by trial court, where the evidence was relevant to showing

---

[2] Under Georgia law,

[t]he only two situations authorizing a verdict of not guilty by reason of insanity are where the defendant does not have the ability to distinguish between right and wrong at the time of the crime, OCGA § 16-3-2, and where at the time of the crime the defendant acted under a delusional compulsion which overmastered his will to resist committing the crime, OCGA § 16-3-3.

*Caldwell v. State*, 257 Ga. 10, 11 (1) (354 SE2d 124) (1987).

9

that defendant had no knowledge of the child abuse committed by her husband, an issue which was "very different" from the issue whether the defendant had the criminal intent to harm her son).

3. Anthony also asserts that the trial court erred by not charging the jury on the lesser included offense of criminal trespass. In this regard, he appears to contend in this brief that he was entitled to a jury instruction on the lesser included offense of criminal trespass under OCGA § 16-7-21 (b) (1), which provides that a person commits the offense of criminal trespass when he knowingly and without authority enters upon the land or premises of another for an unlawful purpose.

Because Anthony neither requested this charge nor objected when the trial court failed to give it, we review the failure to give the charge only for plain error. See *Alatise v. State*, __ Ga. __, __ (2) (Case No. S12A0024, decided June 18, 2012); *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012). To prove that the failure to give the charge was plain error, Anthony must show that a four-pronged test has been met: the omission of the charge was erroneous, the error was obvious, the omission of the charge likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. See *White*, 291 Ga. at 8 (2); *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

10

Anthony cannot show that the failure to charge the jury on the lesser included offense of criminal trespass was erroneous, and thus cannot show that the first prong has been met for proving plain error. Where the evidence shows either the commission of the offense charged in the indictment, or the commission of no offense at all, the trial court is not required to charge the jury on a lesser included offense. See *Sanders v. State*, 293 Ga. App. 534, 536 (2) (a) (667 SE2d 396) (2008). Furthermore, a charge on the lesser included offense of criminal trespass is not warranted in a burglary case where the defendant claimed to have been on the premises for a lawful purpose. See *Reidling v. State*, 309 Ga. App. 719, 720 (2) (710 SE2d 903) (2011); *Sanders*, 293 Ga. App. at 536 (2) (a); *Moore v. State*, 280 Ga. App. 894, 898 (6) (c) (635 SE2d 253) (2006).

Anthony claimed in his interview with the investigator that he was at the victim's property for the lawful purpose of looking it over as a possible place to live. The defense presented the testimony of Anthony's mother and stepfather in an effort to corroborate his claim, and elicited testimony from the neighbor on cross-examination that the victim's home may have had a "for sale" sign still outside of it. In contrast, the State presented evidence reflecting that Anthony entered onto the property with the intent to commit theft inside the victim's home, as discussed in

11

Division 1. There was no evidence that Anthony entered on the property for any other unlawful purpose.[3] Thus, if the jury believed the State's evidence, Anthony was guilty of criminal attempt to commit burglary, but if the jury accepted Anthony's defense to that crime, he was guilty of no offense. Under these circumstances, where Anthony was guilty either of criminal attempt to commit burglary or no crime at all, the trial court committed no error, and thus no plain error, in failing to charge the jury on the lesser included offense of criminal trespass. See *White*, 291 Ga. at 9 (2) (because defendant failed to show that trial court was required to give the instruction at issue, he could not show plain error).

4. In a related enumeration of error, Anthony maintains that his trial counsel was ineffective for failing to request a charge on the lesser included offense of criminal trespass or to object when the trial court failed to give that charge.

> To prevail on a claim of ineffective assistance, [Anthony] must show that counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been

---

[3] Unlike in *Waldrop v. State*, 300 Ga. App. 281, 285 (3) (684 SE2d 417) (2009), and *Hiley v. State*, 245 Ga. App. 900, 901 (539 SE2d 530) (2000), there was no evidence that Anthony made an unauthorized entry onto the victim's property simply for the purpose of loitering there.

different. We need not address both the deficient performance and prejudice prongs of the test if [Anthony] has made an insufficient showing on either prong.

(Citation and punctuation omitted.) *Ledford v. State*, 313 Ga. App. 389, 393 (4) (721 SE2d 585) (2011). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Because, as explained in Division 3, Anthony cannot show that a jury charge on the lesser included offense of criminal trespass would have been appropriate, he cannot show that his trial counsel's performance was deficient. See *Jones v. State*, 287 Ga. 770, 772 (2) (700 SE2d 350) (2010). Consequently, the trial court did not err in denying Anthony's motion for a new trial on the ground of ineffective assistance of counsel. See *Ledford*, 313 Ga. App. at 393 (4).

*Judgment affirmed. Adams and McFadden, JJ., concur.*